Frank B. SIRES, Plaintiff,

v.

Douglas M. LUKE, Defendant.

Civ. A. No. CV180–214.

United States District Court,
S. D. Georgia,
Augusta Division.

Aug. 6, 1982.

Blount & Curry, Augusta, Ga., Dowling, Sanders, Dukes, Novit & Svalina, P. A., Beaufort, S. C., for plaintiff.

A. Montague Miller and Thomas W. Tucker, Augusta, Ga., for defendant.

## ORDER

BOWEN, District Judge.

This matter is before the Court upon motions of the plaintiff and defendant, pursuant to Rule 56 of the Fed.R.Civ.P., for summary judgment. On September 2, 1980, the plaintiff purchased from the defendant a garbage collection and disposal business known as Luke's Container & Residential Garbage Disposal Service. The purchase included trucks, customer lists, accounts receivable and payable; telephone number, post office box, business records, goodwill, a

covenant on the part of the defendant not to compete, and a consultant contract whereby defendant would assist the plaintiff in assuming operation of the business. After the purchase, the plaintiff experienced difficulties in the operation of the business. The trucks purchased required a great deal of maintenance work to keep them operational, and some of the trucks were removed from service. There developed difficulty in servicing customer accounts because of the equipment failures, a lack of customer route information, and disputes as to which accounts receivable had been paid.

On December 17, 1980, the plaintiff filed this suit against the defendant for fraud and deceit, suppression of the truth, tortious interference with business, conversion, breach of contract and breaches of express and implied warranties. The plaintiff also requested injunctive relief against the defendant. Plaintiff alleges that the defendant made false representations during the negotiation of the contract about the condition of the equipment and the accounts receivable, the location of customers, and defendant's availability and willingness to assist the plaintiff in assuming operation of the business. Plaintiff also asserts that defendant has collected debts owed to plaintiff and kept the money for his own use. Plaintiff contends that defendant breached the purchase contract in that (1) the equipment was not in "operating condition," as stated in the contract, when sold; (2) the defendant has not made timely delivery of copies of the business records and accounts, accurate customer lists and customer route sheets, documentation and certificates on the equipment, and (3) defendant has not turned over the accounts receivable due the plaintiff. Sires further contends that the equipment was not in operating condition, a breach of express and implied warranties made him by the defendant. The plaintiff also requests injunctive relief against the defendant.

Defendant Luke denies all of the plaintiff's allegations. Defendant asserts as a counterclaim that plaintiff entered into the purchase agreement with the intention of breaching it and of depriving the defendant of the garbage business without paying for it. The defendant contends that plaintiff has destroyed the goodwill of the business and the value of the collateral. Defendant further alleges that plaintiff has breached the consultant contract and has slandered defendant. The defendant seeks appointment of a receiver in the business and an acceleration of the promissory note he holds, plus damages for fraud and slander. The defendant also requests that the restrictive covenant be declared null and void.

The process of determining a summary judgment motion, under Fed.R.Civ.P. 56, incorporates the observance of several cardinal principles. The burden is on the movant to establish that no genuine issue of fact exists, *Lovable Company v. Honeywell, Inc.*, 431 F.2d 668, 670 (5th Cir. 1970). All reasonable doubts must be resolved in favor of the party opposing the motion. *Casey Enterprises v. American Hardware Mutual Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981). If the movant's supported motion pierces the pleadings of the opposing party, the burden shifts to the opposing party to show that a genuine issue of fact exists. This burden cannot be carried by reliance on the pleadings. Instead, the opposing party must set forth by affidavit, deposition, or otherwise, specific facts and details which demonstrate the existence of a genuine issue as to a material fact. *Garcia v. American Marine Corporation*, 432 F.2d 6, 7–8 (5th Cir. 1970); *Lovable Company v. Honeywell, Inc., supra.* Supporting affidavits or depositions that state mere conclusions or recite the allegations contained in the pleadings are not of any probative value in determining a summary judgment motion. *Benton-Volvo-Metairie, Inc. v. Volvo Southwest, Inc.*, 479 F.2d 135, 139 (5th Cir. 1973). Finally, summary judgment is used only when nothing is to be gained by going to trial. *Lovable Company v. Honeywell, Inc., supra.*

## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

The plaintiff seeks partial summary judgment against defendant Luke on the por-

tions of the counterclaim pertaining to (a) slander per se, (b) appointment of a receiver, (c) voiding of the restrictive covenant, (d) acceleration of the promissory note, and (e) damages for fraud.

Based upon a review of the motion, the defendant's reply thereto, the pleadings, affidavit, and depositions in this case, I conclude that the plaintiff's motion should be GRANTED in part and DENIED in part.

## SLANDER

The defendant alleges in his counterclaim that "plaintiff herein has made charges against the defendant in reference to defendant's trade and profession; said charges were made in the presence of third persons; constitute slander per se." In the defendant's deposition, he was asked to state upon what facts he based that claim:

Q. And I want to find out specifically how he has slandered you, Mr. Luke.

\* \* \* \* \* \*

A. Mr. Johnson has stated to me that Mr. Sires has stated to the customers, and that was my testimony earlier, over the telephone in regards to what ... my methods of operation, what a sorry businessman I was, how sorry I kept my equipment, how I ran the business and all this type thing, sir. Has slandered my name and my good will in relation to the customers. How, he also stated that Mr. Haney had said that if I had continued to operate this business ... or my business for two additional months, that I would have gone bankrupt because of the condition of the business. Is that clear to you, sir.

Q. Is that what Mr. Johnson told you?

A. That's what he told me, sir.

\* \* \* \* \* \*

Q. Has anybody else other than Mr. Johnson told you that?

A. No, sir.

(*Deposition, Douglas M. Luke*, p. 163, ln. 6–25, p. 164, ln. 10–11).

The defendant testified that both the plaintiff and Mr. Haynie, plaintiff's employee, slandered defendant's name. Haynie is not a party to this suit. There are no allegations that the plaintiff directed Haynie to slander defendant. The deposition of defendant Luke is devoid of any assertions that Haynie's remarks were authorized or even known by the plaintiff Sires (*Deposition, Douglas M. Luke*, p. 160, ln. 24–25, p. 161, ln. 1–13).

In considering a motion for summary judgment, the Court must resolve all doubt as to the existence of a genuine issue of material fact against the moving party. All inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1964). In this case there are no facts from which an inference could be drawn that the plaintiff authorized Haynie to make any statements about the defendant. Without examining the substance of the alleged slanderous words uttered by Haynie, it is clear that the defendant cannot maintain an action for slander against the plaintiff based upon any remarks made by Haynie. The doctrine of *respondeat superior* is not applicable to an action for slander. *White v. Cudahy Co., Inc.*, 130 Ga.App. 64, 202 S.E.2d 233 (1973); *Ozborn v. Woolworth*, 106 Ga. 459, 32 S.E. 581 (1899). Even if the words were spoken by plaintiff's agent within the scope of that agency and in behalf of or for the interest of Sires, the plaintiff would not be liable for slander. It must be alleged and shown that the plaintiff expressly ordered or directed Haynie to speak the words in question. *Behre v. National Cash Register Co.*, 100 Ga. 213, 214, 27 S.E. 986 (1896). Absent any evidence that the plaintiff directed or ordered Haynie to speak slanderous words about the defendant, the Court must grant summary judgment as to that count unless Sires himself made defamatory statements about the defendant.

The defendant asserts that plaintiff uttered slanderous statements about him. The basis for his claim is what was told him by Ricky Johnson. Defendant's only knowledge of the alleged slander is his conversa-

**1160**

tion with Johnson. (*Deposition, Douglas M. Luke*, p. 110, ln. 9–19, p. 164, ln. 10–11). Mr. Johnson's testimony at deposition does not support the contentions of defendant Luke. Johnson testified that the plaintiff had never said anything derogatory about defendant's operation of his business or about defendant's financial affairs. He further testified that anything he might have said to defendant about the plaintiff's making defamatory remarks to customers was a lie.

Q. I want to know what he said about Mr. Luke.

A. What he said about him?

Q. Yes.

A. Directly said about Mr. Luke, nothing.

Q. What did he say about Mr. Luke and the way he handled his business?

A. What he said about Mr. Luke and handled his business?

Q. Yes.

A. Nothing.

Q. What did he say about Mr. Luke and the way he maintained his trucks?

A. What did he say? He told me himself, he said, "I don't know how the man kept those trucks on the road."

Q. Did he say he didn't understand how he was making any money with them?

A. Mr. Sires? No, he did not.

＊　＊　＊　＊　＊　＊

Q. Did you ever hear anybody say that a couple of more months Mr. Luke would have been in bankruptcy? Who said that, Mr. Sires?

A. No, sir.

＊　＊　＊　＊　＊　＊

Q. Did Mr. Sires say anything about his financial condition?

A. No, sir.

＊　＊　＊　＊　＊　＊

A. One thing on there ... one statement, the only statement that I can remember that I made in that thing that I know that if I said anything about it, I lied about it was a statement that was supposed to have been made saying that Mr. Sires or someone said something about ... was telling people on the phone that the business or the bills and all this and that stuff was bad. I don't even know anything about the bills because I was not in the office to work. If I answered the phone, I answered the phone down in the garage where I belonged.

Q. Why would you have told that to Mr. Luke?

A. Because I was mad.

Q. And you want to hurt Mr. Sires?

A. Yes, sir.

(*Deposition, Douglas M. Luke*, p. 49, ln. 19–25, p. 50, ln. 1–9, 17–20, p. 51, ln. 5–6, p. 52, ln. 11–24).

 This Court may consider only that evidence that would be admissible at trial. *See Samuels v. Doctors Hosp., Inc.*, 588 F.2d 485, 486 n.2 (5th Cir. 1979); *Liberty Leasing Co. v. Hillsum Sales Corp.*, 380 F.2d 1013 (5th Cir. 1967). The use of depositions under Rule 56 is limited to those statements made "on personal knowledge" [that] would be admissible in evidence," *Liberty Leasing Co. v. Hillsum Sales Corp., supra*, 381 F.2d at 1015. Testimony as to what a nonparty witness may have told Luke is hearsay and inadmissible. " 'An allegation that A said that B said ... is an allegation of what A said but is not an allegation of what B said.' *McKown v. Great A & P Tea Co.*, 99 Ga. App. 120 [107 S.E.2d 883], supra. It is pure hearsay." *White v. Cudahy, supra*, 130 Ga. App. at 66, 202 S.E.2d 233.

 The plaintiff has carried his burden of showing that there is no genuine issue of material fact as to the allegations of slander. The defendant has produced no evidence of slander. Once the pleadings have been pierced by the moving party, as has been done here through the testimony of Johnson and the affidavit of the plaintiff, it is incumbent upon the opposing party to introduce evidence showing the existence of a genuine issue of fact. A mere hope that further evidence may develop prior to trial will not defeat a summary judgment motion. *Neely v. St. Paul Fire &*

*Marine Ins. Co.*, 584 F.2d 341 (9th Cir. 1978). The record is devoid of any evidence that would support Luke's allegations that he was slandered by Sires. Plaintiff's motion for partial summary judgment as to the counts relating to slander is GRANTED.

## APPOINTMENT OF A RECEIVER

Defendant alleges in his counterclaim that "plaintiff is destroying the assets held by defendant as collateral and that a receiver needs to be appointed in order to run the business properly and to protect defendant's assets from further destruction by the plaintiff." The defendant, in his deposition, testified that the collateral had been destroyed, in part, because the engines had been blown in two of the trucks, a 1973 Chevrolet and a 1975 Chevrolet pickup (*Deposition, Douglas M. Luke,* p. 69, ln. 23–25, p. 70, ln. 1–7, 10–13). According to the defendant's estimate, the two trucks were worth at the time of the sale approximately $9,000 to $11,000 (*Deposition, Douglas M. Luke,* p. 70, ln. 14–17, p. 71, ln. 5–12). The amount of the note for which these trucks are collateral is $181,930.76. The defendant further testified that he felt the plaintiff had abandoned two other trucks by not maintaining and operating them. These vehicles were spare trucks, and the defendant had not operated them every day when he ran the business. (*Deposition, Douglas M. Luke,* p. 70, ln. 13–25). Defendant testified that he had no evidence that any of his collateral had been sold (*Deposition, Douglas M. Luke,* p. 105, ln. 1–3). Defendant testified that plaintiff had destroyed his collateral by losing some of the customers, although he did not know how many had been lost (*Deposition, Douglas M. Luke,* p. 106, ln. 6–15). The customers had been lost, according to the defendant, because plaintiff Sires changed over to an advance billing system and because Sires and his employee had allegedly slandered Luke (*Deposition, Douglas M. Luke,* p. 106, ln. 16–25, p. 107, ln. 1–25, p. 108, ln. 1–12).

 The appointment of a receiver is a matter resting within the sound discretion of the Court. *See Parrish v. Rigell,* 183 Ga.

218, 188 S.E. 15 (1936). The power of appointing receivers should be prudently and cautiously exercised. Except in clear and urgent cases it should not be resorted to by the Court. Ga.Code Ann. § 55–303. It has been said that "the high prerogative of taking property out of the hands of one, and putting it in pound, under the order of a judge, ought not to be taken, except to prevent manifest wrong, imminently impending." *Crawford v. Ross,* 39 Ga. 44, 49 (1869). The appointment of a receiver is recognized as one of the harshest remedies which the law provided for the enforcement of rights, and is allowable only in extreme cases, and under circumstances where the interest of creditors is exposed to manifest peril. *Dozier v. Logan,* 101 Ga. 173(2), 179, 28 S.E. 612 (1897).

 There are no allegations in defendant's counterclaim nor has any testimony been offered that the property is deteriorating in value so as to become of less value than the amount of defendant's lien. *See White v. Malone,* 174 Ga. 886, 164 S.E. 672 (1932). To justify appointment of a receiver, the pleadings and the evidence must show that the defendant's rights are in immediate peril and that he will be prejudiced if a receiver is not appointed. *See Bower v. Certain-Teed Products,* 216 Ga. 646, 119 S.E.2d 5 (1961); *Dixie-Land Iron & Metal Co. v. Piedmont Iron & Metal Co.,* 235 Ga. 503, 220 S.E.2d 130 (1975). Even should the Court assume that the collateral is greatly decreasing in value, the testimony shows that the plaintiff is current on his payments on the promissory note (*Deposition, Douglas M. Luke,* p. 154, ln. 15–17). The Court can find no testimony or evidence that would indicate that the plaintiff will be unable to make his payments regularly. The defendant expresses a generalized concern that the plaintiff may cease operating the business before the note is paid in full (*Deposition, Douglas M. Luke,* p. 160, ln. 9–13). This is not evidence of "manifest wrong, imminently impending." Because there is no evidence in the record from which the Court can infer that the interests of the defendant are exposed to

**1162**

manifest peril, plaintiff's motion for partial summary judgment is GRANTED with respect to those allegations pertaining to appointment of a receiver.

### RESTRICTIVE COVENANT

Defendant alleges in his counterclaim that "plaintiff further required the defendant to enter into a restrictive covenant which should be, in the circumstances, void as against public policy and in restraint of trade, and defendant hereby requests this court to declare said restrictive covenant null, void and unenforceable as written." The defendant objects to the continued viability of this clause because the plaintiff has sued him on the contract:

Q. Okay. What facts do you base your allegation that the non-competition clause in the bill of sale, which you signed on September 2, 1980, was void against public policy and in restraint of trade? Paragraph 13.

A. Paragraph 13, okay. Inasmuch as these legal proceedings have been brought against me, which were unwarranted and unjustified because I've done nothing which would warrant and constitute a claim of bringing me into Court.

(*Deposition, Douglas M. Luke*, p. 153).

The restrictive covenant contained in this case provides that:

AND the said DOUGLAS M. LUKE warrants and covenants that he, his successors, heirs, assigns, agents or other persons or entities, real or corporate, shall not on his behalf or for his benefit, directly or indirectly, engage in, own any interest in, manage, operate, participate in, or be connected in any capacity, aid counsel, or be employed by any business in competition with the aforesaid business being transferred by this instrument, without the said FRANK B. SIRES' express written consent; said prohibition including, but not being limited to, any activity which provides any waste, garbage or refuse collection/disposal service; said prohibition shall be in force for a period of five (5) years next following the date hereof within a radius of seventy-five (75) miles from the southeast corner of the intersection of Broad and 7th Streets, in Augusta, Richmond County, Georgia.

This agreement was entered into on September 2, 1980. The note for payment of the purchase price extends over a period of six years, from October 1, 1980, to September 1, 1986.

In order to find a covenant in restraint of trade enforceable, it must be shown that the restraint is reasonable as to time, territory, and activity proscribed when executed. *Dalrymple v. Hagood*, 246 Ga. 235, 236, 271 S.E.2d 149 (1980). What is reasonable in such covenants is a matter of law for the Court to decide. *Watkins v. Avnet, Inc.*, 122 Ga.App. 474, 476, 177 S.E.2d 582 (1970).

This action is based upon the diversity of citizenship of the parties. Accordingly, in determining the reasonableness of the restrictive covenant, the Court will be guided by the decisions of the Georgia courts. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Under Georgia law, greater latitude is afforded to covenants relating to the sale of a business than to those that are ancillary to an employment contract. *Dalrymple v. Hagood*, 246 Ga. 235, 271 S.E.2d 149 (1980).

In the case before the Court the covenant is part of the sale of a business. It extends for a five-year period. The note to secure payment for the sale extends for six years. The area encompassed by the agreement is a seventy-five mile radius of Augusta, Georgia. The deposition of the plaintiff discloses that this business does not operate solely within the confines of Augusta and Martinez, Georgia. Service in the surrounding areas and outside the state of Georgia is afforded by the operation. The time period, the area covered, and the activity proscribed by the agreement are reasonable. *See Black v. Horawitz*, 203 Ga. 294, 46 S.E.2d 346 (1948) (five years within the greater Atlanta area); *Hood v. Legg*, 160 Ga. 620, 128 S.E. 891 (1925) (ten years, 300 miles radius); *Valdosta Drug Co. v. Mashburn Drug Co.*, 183 Ga. 471, 188 S.E.

694 (1936) (five years, 110 mile radius); *Nelson v. Woods*, 205 Ga. 295, 53 S.E.2d 227 (1949) (five years, within county). The plaintiff's motion for partial summary judgment is GRANTED with respect to those allegations dealing with the restrictive covenant between the parties.

## ACCELERATION OF PROMISSORY NOTE

■ The defendant alleges that the conduct of the plaintiff "constitutes a breach of plaintiff's agreements with defendant" and has accelerated the balance due under the promissory note. The note itself establishes the conditions permitting acceleration of the balance due:

## DEFAULT

14. The Debtor shall be in default under this Security Agreement on the happening of any of the following events or conditions:

(a) Default in the payment or performance of any note, obligation, covenant, or liability contained or referred to therein;

(b) Any warranty, representation, or statement made or furnished to the Secured Party by or in behalf of the Debtor proves to have been false in any material respect when made or furnished;

(c) Any event which results in the acceleration of the maturity of the indebtedness of the Debtor to others under any indenture, agreement, or undertaking;

(d) The making of any levy, seizure, or attachment of any of the collateral;

(e) Death, dissolution, termination of existence, insolvency, business failure, appointment of a receiver for any part of the Collateral, assignment for the benefit of creditors or the commencement of any proceeding under any bankruptcy or insolvency law by or against the Debtor or any guarantor or surety for the Debtor.

(f) Notwithstanding, Secured Party hereby grants Debtor a twenty-day grace period to cure a default under this Security Agreement. This twenty-day grace period shall run from the date of written notice. Notice shall be deemed given when deposited in the United States Mail with adequate postage thereon to Debtor at his address listed above or such other business addresses as shall be furnished to Secured Party.

The remedies delineated in paragraph 15 shall not be available to Secured Party until the expiration of the grace period as defined in this paragraph 14(f).

## REMEDIES

15. On the occurrence of any such event of default, and at any time thereafter, the Secured Party may declare all obligations secured immediately due and payable and may proceed to enforce payment of the same . . . .

The defendant asserts that the plaintiff has breached obligation 14(a) of the Security Agreement by failing to keep the collateral in good order and repair and by wasting or destroying part of it (*Deposition, Douglas M. Luke*, pp. 65–75). The plaintiff, by affidavit, contends "that, with regard to the allegations that Plaintiff has damaged or destroyed the assets of the business sold to him by the Defendant, Affiant swears that he has not in any way destroyed or damaged any of the assets of the business; and 5. That, furthermore, Affiant swears that he has substantially improved the assets of the business, to the benefit of himself as well as the Defendant. . . ." The plaintiff, by his affidavit, as well as his testimony on deposition, has pierced the pleadings of the defendant. The burden is upon the defendant to show a genuine issue of fact. The defendant, when asked at deposition to describe the extent of damage he asserted had been done to the collateral, did not know:

Q. What I want to know is what you contend you have actually lost because he's not maintained that equipment?

A. Mr. Blount, I couldn't tell what . . . how much he has damaged the equipment, sir.

Q. So you don't know?

A. No, sir. I don't know, sir, that exact figure.

(*Deposition, Douglas M. Luke*, p. 159, ln. 15–21).

\* \* \* \* \* \*

Q. You haven't gone and inspected the collateral to see what's wrong with it.

A. I haven't had an opportunity to do that, sir.

(*Deposition, Douglas M. Luke*, p. 72, ln. 14–17).

The defendant has failed to create an issue of fact as to whether the collateral has been kept in good order and repair or whether such a failure would constitute a breach of the Security Agreement. Under the terms of the Security Agreement, the defendant has the right to inspect his collateral. The parties have engaged in extensive discovery. There is no excuse at this stage of the proceeding for the defendant's failure to state with specificity the facts he relies upon to establish his claim that the collateral is being destroyed and is not maintained in good repair. Moreover, there is no evidence that the defendant has complied with the terms and conditions of the Security Agreement in accelerating the note. According to the Agreement, "the remedies [of acceleration of payments and the filing of suit] shall not be available . . . until the expiration of the grace period [of twenty days after written notice of default is given to the plaintiff]." There is no evidence that written notice of default was sent to the plaintiff. The pleading states that the "defendant hereby accelerates all monies owed to him by defendant (sic) and demands payment thereof." The defendant could not make such a demand until notice under the agreement had been given to the plaintiff. The giving of notice was a condition precedent to the exercising of the right of acceleration. The giving of the notice must be pleaded and proved. *See* Fed.R. Civ.P. 9(c). The failure of the defendant to do so is fatal to his claim. *See McAllister v. City of Riesel*, 146 F.2d 130 (5th Cir. 1945). The plaintiff's motion for partial summary judgment is GRANTED as to those portions of the counterclaim pertaining to the acceleration of the plaintiff's indebtedness to the defendant.

## PLAINTIFF'S FRAUD

█ The defendant alleges that the actions of the plaintiff in his dealings with defendant amount to fraud. The defendant asserts that the plaintiff has attempted to defraud and cheat the defendant out of the business without paying for it. The plaintiff denies these allegations and avers that the wrongs complained of would state a claim for breach of contract, if proved, but not fraud. A genuine issue of fact exists. The question of fraud on the part of the plaintiff toward the defendant is a matter for the jury to decide. *See Johnson v. Renfroe & McCrary*, 73 Ga. 138 (1884). Accordingly, the plaintiff's motion for partial summary judgment is DENIED as it pertains to the defendant's allegations of fraud.

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The defendant also has moved this Court for summary judgment on the plaintiff's complaint. Based upon a review of defendant's motion and briefs, plaintiff's reply thereto, the pleadings, affidavit, and depositions in this case, I conclude that the defendant's motion should be GRANTED in part and DENIED in part.

## FRAUD AND DECEIT AND SUPPRESSION OF THE TRUTH

In Counts I and II of the complaint, the plaintiff alleges that the defendant defrauded and deceived the plaintiff into purchasing the business by making knowing misrepresentations of fact. The plaintiff contends the defendant suppressed the truth, causing plaintiff's injury. The Asset Purchase Agreement between the parties contains the following clause:

This Agreement constitutes the entire contract between the parties hereto pertaining to the subject matter hereof and supersedes all prior and contemporaneous agreements (except those contemplated hereunder), understandings, negotiations and discussions of the parties, whether

oral or written, and there are no warranties, representations or agreements between the parties in connection with the subject matter hereof except as set forth or referred to herein. Any supplement, modification, waiver or termination of this Agreement shall only be binding if executed in writing by the party to be bound thereby.

The defendant argues that this merger clause is a complete bar to plaintiff's suit for fraud and deceit and suppression of the truth. The plaintiff has elected to affirm the contract and seeks damages for the alleged fraudulent misrepresentations and suppression of the truth. In electing to affirm the contract, the plaintiff becomes bound by the provisions of the contract. He may not recover for misrepresentations or concealments if any of the contractual provisions prevent him from establishing the five essential elements of an action for deceit. *Gem City Motors v. Minton*, 109 Ga.App. 842(2), 137 S.E.2d 522 (1964). The defendant contends that the merger clause in the contract precludes the plaintiff from establishing reliance upon the defendant's misrepresentations or omissions. Ordinarily the question of fraud, the truth and materiality of representations made by a defendant, and whether the plaintiff could have protected himself by the exercise of proper diligence are, except in plain and indisputable cases, questions for the jury. *See Brown v. Techdata Corp., Inc.*, 238 Ga. 622, 234 S.E.2d 787 (1977). The fact that a merger clause was included in the contract will not remove the question of fraud in this case from the jury's consideration. Although a purchaser signs a contract of sale which provides that it contains the entire agreement between the parties and that no representation, statement, or inducement except as noted in the contract shall be binding upon either party, this merger clause does not defeat the action where the fraud alleged to have been perpetrated was such as to prevent the purchaser from exercising his own judgment. *Hester v. Wilson*, 117 Ga.App. 435, 439, 160 S.E.2d 859 (1968). Because a genuine issue of material fact exists as to the plaintiff's actions for fraud and deceit and suppression of the truth, defendant's motion for summary judgment as to the portions of the complaint pertaining to fraud and deceit and suppression of the truth is DENIED.

## TORTIOUS INTERFERENCE WITH BUSINESS

In Count II of the complaint the plaintiff charges the defendant with tortiously interfering with plaintiff's business. When his deposition was taken, the plaintiff testified that he was not accusing the defendant of doing anything to interfere with his business (*Deposition, Frank B. Sires*, p. 111). It appears from the plaintiff's brief that the plaintiff has abandoned this Count. Accordingly, the defendant's motion for summary judgment as to the portions of the complaint pertaining to tortious interference with business is GRANTED.

## CONVERSION

The plaintiff in Count IV of the complaint alleges that the defendant has converted portions of accounts receivable due the plaintiff. Sires has prayed for punitive damages as a result of this conversion. The defendant asserts that the substance of the action is *ex contractu*, and therefore the plaintiff cannot recover punitive damages. Ga.Code Ann. § 20–1405. Punitive damages are recoverable in a conversion action. Such an action is synonymous with a trover action, *see Guardian Discount Co. v. Settles*, 114 Ga.App. 418, 151 S.E.2d 530 (1966), and punitive damages are recoverable in a trover action, *see Sisk v. Carney*, 121 Ga.App. 560, 174 S.E.2d 456 (1970). Because this action is founded in tort, rather than contract, the plaintiff may recover punitive damages should the facts and circumstances justify such an award by the jury. The defendant's motion for summary judgment as to the issue of punitive damages in Count IV is DENIED.

## PUNITIVE DAMAGES

Count V of the complaint is based upon defendant's alleged breach of con-

tract. Count VI is based upon breach by the defendant of an express warranty. Count VII alleges a breach by the defendant of an implied warranty. The plaintiff seeks punitive damages against the defendant on these counts. The defendant has moved for summary judgment on the issue of punitive damages, asserting that these counts are based in contract, rather than tort. Plaintiff does not oppose defendant's motion. These counts are grounded in contract and, as a matter of law, cannot justify an award of punitive damages. Accordingly, defendant's motion for summary judgment as to the issue of punitive damages in Counts V, VI, and VII is GRANTED.

### INJUNCTIVE RELIEF

██ Plaintiff has averred in Counts III, IV, and VIII that he is suffering irreparable harm, that he has no adequate remedy at law, and that he is entitled to injunctive relief. The defendant has moved for summary judgment on the grounds that the issue has been mooted and there exists an adequate remedy at law. The plaintiff does not oppose defendant's motion. Accordingly, the defendant's motion for summary judgment as to the injunctive relief requested in Counts III, IV, and VIII is GRANTED.

### BREACH OF IMPLIED WARRANTY

Count VII of the complaint seeks damages for the breach of an implied warranty of fitness for a particular purpose. Section 3.1(b) of the Asset Purchase Agreement between the parties states in part that " . . . all property shall be sold 'as is,' but the SELLER agrees that the rolling stock will be in operating condition."

██ The term "sold as is" when contained in a contract for the sale of personalty means that the buyer takes the article in its then present state or condition without any implied warranty as to soundness of condition or suitability for the purposes or use intended. Ga.Code Ann. § 109A–2–316(3)(a); *Findley v. Downing Motors, Inc.*, 79 Ga.App. 682, 54 S.E.2d 716 (1949); *Lancaster v. Eberhardt*, 141 Ga.App. 534, 233

S.E.2d 880 (1977); *Hutchinson Homes, Inc. v. Guerdon Industries, Inc.*, 143 Ga.App. 664, 239 S.E.2d 553 (1977). No implied warranty of fitness for a particular purpose arose out of the transaction here. The language in the Asset Purchase Agreement excluded any implied warranties. The defendant's motion for summary judgment as to plaintiff's claim for breach of implied warranties is GRANTED.

### BREACH OF EXPRESSED WARRANTIES

Count VI of the complaint alleges a breach of an expressed warranty by the defendant Luke. The Asset Purchase Agreement warranted that the rolling stock would be in "operating condition." *See* Ga. Code Ann. § 109A–2–313. Both the plaintiff and the defendant stipulate as to the meaning of the term "operating condition." *See* Statements of Fact. However, they disagree as to the conformity of the equipment with this representation. Although a genuine issue of material fact exists as to the existence of a breach of the warranty by defendant, Luke avers that as a matter of law the plaintiff has waived his objections to the breach by continuing to make payments under the Agreement.

██ The Uniform Commercial Code permits an action for breach of warranty without the necessity of a return of the offending goods. Acceptance of the goods is declared as not of itself impairing any remedy for nonconformity. *See* Ga.Code Ann. § 109A–2–607(2). The fact that the buyer pays the price after notice of defects in the goods constituting a breach of warranty does not as a matter of law constitute a waiver of the breach. *See Smith v. Free*, 43 Ga.App. 685, 159 S.E. 909 (1931). Defendant's motion for summary judgment as to the plaintiff's action for breach of expressed warranty is DENIED.

### CONCLUSION

The plaintiff's motion for partial summary judgment is GRANTED as to those portions of the counterclaim pertaining to (a)

slander per se, (b) appointment of a receiver, (c) voiding of the restrictive covenant, and (d) acceleration of the promissory note. The plaintiff's motion is DENIED as to those portions of the counterclaim pertaining to fraud.

The defendant's motion for summary judgment is GRANTED as to those portions of the complaint pertaining to (a) tortious interference with business, (b) plaintiff's request for punitive damages as to Counts V, VI, and VII, (c) injunctive relief, and (d) breach of implied warranty. The defendant's motion for summary judgment is DENIED as to those portions of the complaint pertaining to (a) fraud and deceit, (b) suppression of the truth, (c) plaintiff's request for punitive damages as to Count IV, and (d) breach of express warranty.